# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00081-CR

**Tettus Davis, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 04-122-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Tettus Davis guilty of possessing more than four grams of cocaine with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2003). The jury assessed punishment, enhanced by a previous felony conviction, at seventy-five years' imprisonment. Davis contends that the evidence is legally and factually insufficient to sustain the guilty verdict, an accomplice witness's testimony was not corroborated, and a recorded telephone conversation was erroneously admitted.[1] We will affirm the conviction.

---

[1] Davis's appointed attorney filed a brief to which is appended a pro se brief prepared by Davis. Counsel states that Davis "directed" her to withdraw from the appeal and file his pro se brief. Points of error one, two, and three were briefed by appellant and adopted by counsel. Point of error four was briefed by appellant, but counsel is of the opinion that it is frivolous. Point of error five was briefed by counsel.

On December 9, 2003, police officers executed a search warrant at a Georgetown apartment. Jenny Garza, the tenant, was in the living room when the officers entered. Davis, an overnight guest, was in the bedroom. The officers found marihuana on the kitchen table, on the living room coffee table, and in the bedroom closet. The officers also found in the kitchen a cigar box containing razor blades and a package of small plastic bags approximately one inch square. Another razor blade, which field tested positive for cocaine, was found in the bedroom. Officers testified that razor blades are used to cut cookies of crack cocaine, and that the pieces are often packaged for sale in plastic bags of the sort found in the apartment. No drugs or drug paraphernalia were found in Davis's car, which was parked outside the apartment.

Davis told the officers that the marihuana in the apartment belonged to him. Referring to the plastic bags, Davis said, "Yeah, I use those for my dope, to sell my dope, but you're not going to find any dope here. I don't sleep with any dope. A good businessman doesn't sleep with his dope." An officer understood Davis to be referring to cocaine. Davis made similar remarks while being driven to the jail following his arrest for marihuana possession.

Garza was also arrested. She told the police that Davis was a drug dealer, and that he kept his cocaine inside a building in downtown Georgetown that once housed a cafe called the Dew Drop Inn. The building was owned by Davis's grandmother, Thedius Hutchison, who had operated the cafe with her husband until his death. The business had been closed for about ten years, and the building was used for storage by various members of the family. Garza told the police that she believed that Davis kept his drugs some place to the right of the front door of the building.

Mary Anderson, Hutchison's daughter and Davis's aunt, lived across the street from the Dew Drop Inn. Anderson, who had Hutchison's power of attorney, gave the police her written

2

consent to search the building. Anderson did not have a key, but an officer was easily able to open the front door with a credit card. To the right of the door, the officers saw a box of clothing sitting on a pool table. Underneath the clothes, they found both powder and crack cocaine packaged in small plastic bags as if for sale. The cocaine weighed 35.44 grams and had an estimated street value of $6000.

The evidence at trial showed that the yard outside the Dew Drop Inn was a regular gathering place for Davis and his friends. Garza testified that she had been there with Davis on several occasions and had observed him taking cocaine inside the building. According to Garza, Davis would enter the building, go to his right, then quickly come out. Garza said that Davis referred to the inn as "my cafe." A key ring found in Garza's apartment and later identified as belonging to Davis had two keys fitting the lock on the building. Garza testified that on the night before the raid on her apartment, she had seen Davis with one or two ounces of cocaine. She had also overheard a telephone conversation in which Davis mentioned the cafe. After the conversation ended, Davis left the apartment taking the cocaine with him. Garza testified that two days after the search, she found rocks of crack cocaine inside the shower rod in her bathroom. She said she flushed them down the toilet.

The State also introduced in evidence recordings of several telephone calls Davis made from the jail to Garza and her mother. During one of these calls, Davis urged Garza's mother to "tell her to move everything around, to do something with it." Later, in a conversation with Garza, Davis asked if she had found "that stuff." When Garza replied that she had, Davis said, "Ah, good." In another telephone call from the jail, Davis told Garza to give "the tube" to "Brock," saying he needed money for his lawyer. Davis also instructed Garza to collect $200 from "David"

3

and $135 from "Mason." Referring to the Dew Drop Inn, Davis told Garza that "they didn't see me put anything there. You know, they can't get me with it." He also told her, "They didn't catch me with that. My name ain't nowhere on that house."

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040, at *30-31 (Tex. Crim. App. Oct. 18, 2006); *Johnson*, 23 S.W.3d at 11.

To convict a person of drug possession, the State must prove that the defendant exercised care, custody, control, or management over the drugs and that he knew he possessed a controlled substance. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Martinets v. State*, 884 S.W.2d 185, 187 (Tex. App.—Austin 1994, no pet.). When the defendant is not in exclusive possession or control of the place where the drugs are found, the State must affirmatively link him to the drugs. *Brown*, 911 S.W.2d at 747-48; *Martinets*, 884 S.W.2d at 187. Whether the evidence is direct or circumstantial, "it must establish, to a requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown*, 911 S.W.2d at 747. Circumstantial evidence often has equal or even greater probative value than direct evidence. *Goodman v. State*, 66 S.W.3d 283, 296 (Tex. Crim. App. 2001).

Seldom will any single factor have logical force sufficient to link the accused with the drugs and hence to sustain a conviction. *Hall v. State*, 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref'd). Instead, the required link generally emerges from the logical force that several factors have in combination. *Id*. Ultimately, the question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case-by-case basis. *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

In this case, the following evidence suggests that Davis knowingly exercised care, custody, and control of the cocaine found at the Dew Drop Inn:

Following his arrest at Garza's apartment, Davis freely admitted being a drug dealer but told the police that he was too smart to keep his dope where he sleeps.

Davis told the police that he used the small plastic bags found at the apartment to package his dope for sale.

5

The Dew Drop Inn building was owned by Davis's grandmother, he had keys to the building, and he and his friends often gathered outside the building. Davis referred to the Dew Drop Inn as "my cafe."

On several occasions, Garza had seen Davis take cocaine into the Dew Drop Inn and place it somewhere to the right of the front door. The cocaine was found in a box sitting on a pool table located to the right of the front door.

On the night before his arrest, Garza saw Davis in possession of cocaine at her apartment. Following a telephone conversation in which he referred to his cafe, Davis left the apartment, taking the cocaine with him.

In telephone calls to Garza from the jail, Davis asserted that the police could not connect him with the cocaine at the Dew Drop Inn because they did not see him put anything there.

Viewing this evidence in the light most favorable to the verdict, we hold that a rational trier of fact could find beyond a reasonable doubt that Davis knowingly possessed the cocaine found at the Dew Drop Inn. Point of error one is overruled.

Although the existence of reasonable alternative hypotheses other than guilt is not a factor in legal sufficiency analysis, it is relevant to a factual sufficiency analysis. *Compare Brown*, 911 S.W.2d at 748, *with Orona*, 836 S.W.2d at 321. The evidence shows that persons regularly congregated outside the Dew Drop Inn. The building was used for storage by Davis's family, and several family members, in addition to Davis, had keys. Moreover, the building was hardly secure; a police officer easily opened the front door with a credit card. None of the non-contraband found inside the building, including the clothing used to conceal the cocaine in the cardboard box, was shown to belong to Davis. A fingerprint was found on one of the bags of cocaine, but it was not Davis's. While it is conceivable that the cocaine found by the police belonged to someone other than Davis, we must respect the jury's determination regarding the weight to ascribe to the various pieces

6

of relevant evidence. Considering all the evidence, both incriminating and exculpatory, in a neutral light, we hold that the finding of guilt beyond a reasonable doubt was not clearly wrong, manifestly unjust, or contrary to the great weight and preponderance of the available evidence. Point of error two is overruled.

Davis's third point of error concerns Garza's status as an accomplice witness. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 2005) (accomplice witness rule). The court submitted this question to the jury as an issue of fact. That is, the jury was told to determine if Garza was an accomplice witness as a condition precedent to the corroboration requirement. Davis asserts that Garza was an accomplice as a matter of law and that the evidence is not sufficient to corroborate her testimony.

An accomplice is one who participates with the defendant before, during, or after the commission of the charged offense with the requisite culpable mental state. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). Participation requires an affirmative act that promotes the commission of the offense. *Id*. Neither presence at the scene nor knowledge of the crime is sufficient to make an individual an accomplice. *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). If the evidence clearly shows that the witness was a blameworthy participant in the crime, the court must instruct the jury that the witness is an accomplice as a matter of law. *Id*. at 454-55. But if the evidence is conflicting or unclear regarding the witness's participation in the crime, it is proper to submit the question of the witness's status to the jury as an issue of fact. *Id*. at 455.

Garza clearly knew that Davis was a drug dealer and that he stored his contraband at the Dew Drop Inn. There is no evidence, however, that Garza engaged in any affirmative act by

which she exercised care, custody, or control over the cocaine in question, and she was not indicted for this offense. Moreover, Davis did not object to the charge as given or request that the jury be instructed that Garza was an accomplice as a matter of law. Under the circumstances, the trial court did not egregiously err by allowing the jury to determine as a question of fact whether Garza was or was not an accomplice witness. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). Finally, Davis's access to the Dew Drop Inn and his own statements, both to the police and during the recorded telephone calls, tend to connect him to the offense and are sufficient to satisfy the corroboration requirement. *See Cathey v. State*, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999) (burden of proof under article 38.14). For all of these reasons, point of error three is overruled.

By point of error four, Davis claims that there is no evidence that the suspected contraband found at the Dew Drop Inn was in fact cocaine. The record shows, however, that the seized substances were submitted to the department of public safety laboratory for analysis. The chemist who conducted this analysis testified that the baggies contained cocaine. Point of error four is overruled.

In his final point of error, Davis urges that the trial court erred by admitting irrelevant and unfairly prejudicial statements he made to Garza during one of the recorded telephone calls from the jail. At a pretrial hearing, the State described the remarks as follows:

> Basically in one small segment he starts off and says, "You're goddamn—I'm going to tell the jury, 'You're goddam right I'm a drug dealer. But you didn't catch me with nothing.' And what I'm going to do is I'm going to pick nine bitches and 'hoes on my jury when I pick my jury. All I need is one bitch or one 'hoe, and you know how I am with the bitches and the 'hoes."

8

Over Davis's objections, the court permitted the State to introduce the challenged recording during the guilt-innocence stage, but with the words "bitches" and "'hoes" redacted.[2] After the redacted recording was played for the jury, a police officer read a transcription into the record, with "ladies" substituted for the more offensive terms:

> Tettus Davis: And out of the 12 jurors, you know me, when I pick my jurors, I'm going to have me at least goddamn nine ladies on there. And out of nine ladies, I know I can get one to give me a vote. You know what I'm saying? And I have in quotations that he's laughing.
>
> Jenny Garza then says: Shut up.
>
> Tettus Davis says: I'm for real. I told—and then there was a word that was unintelligible. Shit. I'll be able to just eye them ladies like, yes, baby, just—and another word that's unintelligible. And if I can get one out of 12, I win. You know what I'm saying? That's all I need is one out of 12. I know, baby, if I get mother fuckin' nine ladies on the witness stand—I mean in the jury box—
>
> And then Jenny Garza says: Shut up. I don't want to hear it.
>
> And Tettus Davis laughing says: For real, baby. It's going to be gravy.

Davis argues that this evidence had no tendency to make any fact of consequence to the case more probable than it would have been without the evidence. *See* Tex. R. Evid. 401 (defining "relevant evidence"). Davis further argues that any relevance the evidence might have had was substantially outweighed by the danger of unfair prejudice. *See id.* rule 403. The State responds that "[Davis's] plan to improperly stack the jury with women, because he believed he could charm

---

[2] The unredacted recording was played for the jury at the punishment phase. Davis does not complain of this on appeal.

a jury of women, was relevant in that it showed [his] gimmick-oriented mindset toward his upcoming trial" and "evidenced his consciousness of guilt."

Broadly speaking, the decision to admit or exclude evidence is committed to the trial court's discretion. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g). In this instance, we believe that this discretion was abused. Davis's exaggerated belief in his ability to charm female jurors may have shown that he did not fully appreciate the seriousness of his situation, but it did not reflect a guilty conscience or otherwise tend to prove that Davis knowingly possessed cocaine at the time and place in question. The trial court wisely required the redaction of Davis's offensive references to women before admitting the recording and, by so doing, removed much of the unfair prejudice from the evidence. But even as redacted, the residual prejudice attaching to Davis's remarks outweighed their minimal relevance.

We must determine whether the erroneous admission of the evidence had a substantial and injurious effect or influence in determining the jury's guilty verdict. Tex. R. App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We will not restate all the evidence, but will simply note that Davis was an admitted drug dealer who bragged to the police and his girlfriend that he was too clever to be caught possessing his unlawful goods. Davis had access to the Dew Drop Inn, the place where the cocaine was found, and considered it to be "his cafe." He was often seen taking cocaine into the building. Following the discovery of the cocaine, Davis expressed his mistaken confidence that the police would be unable to connect him with it. During jury argument, there was only one brief reference to Davis's plan to pack the jury with women.

10

Considering the record as a whole, we conclude that the erroneous admission of this evidence did not affect Davis's substantial rights. Point of error five is overruled.

The judgment of conviction is affirmed.[3]

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed: October 31, 2006

Do Not Publish

---

[3] All pending motions are dismissed.